State of WEST VIRGINIA ex rel. Darrell V. McGRAW, Jr., Attorney General, Plaintiff,

v.

ELI LILLY & COMPANY, Defendant.

No. 06–CV–5826.

United States District Court, E.D. New York.

March 6, 2007.

Christiaan Augustus Marcum, H. Blair Hahn, Richardson, Patrick, Westbrook & Brickman, Mt. Pleasant, SC, Frances A. Hughes, Office of the Attorney General, State Capitol Complex, J. Jeaneen Legato, Troy N. Giatras, Charleston, WV, for Plaintiff.

Andrew R. Rogoff, Anthony Vale, Matthew J. Hamilton, Nina M. Gussack, Rachel B. Weil, Pepper Hamilton, LLP., Philadelphia, PA, Raymond S. Franks, Stephen P. Goodwin, Goodwin & Goodwin, Charleston, WV, Samuel J. Abate, Jr., McCarter & English, LLP, New York City, for Defendant.

## MEMORANDUM, ORDER, & JUDGMENT

WEINSTEIN, Senior District Judge.

### I. Introduction

Plaintiff filed this action in the Circuit Court of Mason County, West Virginia, on February 28, 2006, seeking injunctive relief, restitution, and other pecuniary relief for the cost of past and future medical care incurred by the state under various programs, including West Virginia's Medicaid program. The complaint asserts claims arising under West Virginia statutory and common law, including claims for violation of the West Virginia Consumer Credit & Protection Act, violation of the Fraud and Abuse in the Medicaid Program Act, and common law fraudulent misrepresentation.

The case was removed to the United States District Court for the Southern District of West Virginia by defendant Eli Lilly & Company ("Lilly") on April 21, 2006. It was transferred to this district on October 18, 2006 by the Judicial Panel on Multidistrict Litigation. In its notice of removal, defendant alleged that plaintiff's state law claims raise a substantial issue of federal law and therefore conferred federal question jurisdiction under 28 U.S.C. § 1331, or, in the alternative, that plaintiff's claims were preempted by federal law. Plaintiff moves for remand on the grounds that plaintiff's claims do not raise substantial and disputed issues of federal law requiring interpretation or application of federal law for their resolution, and defendant's preemption defense, even if available, is insufficient to confer removal jurisdiction on this court.

This motion deals with essentially the same factual and legal issues this court

considered in deciding a motion to remand to state court a case brought by the state of Louisiana. *See In Zyprexa Prods. Liab. Litig.*, 375 F.Supp.2d 170 (E.D.N.Y. 2005) (*"Louisiana Opinion"*). The matter is not free from doubt. *See Alaska v. Eli Lilly & Co.*, 2006 WL 2168831 (D.Alaska July 28, 2006) (declining to follow this court's *Louisiana Opinion* ). *Cf., e.g., Desiano v. Warner–Lambert*, 467 F.3d 85, 97 n. 9 (2d Cir.2006) (discussing the legal implications of the FDA's views on the preemptive effect of its regulations); Matthew C. Stephenson, *The Strategic Substitution Effect: Textual Plausibility, Procedural Formality, and Judicial Review of Agency Statutory Interpretations*, 120 Harv. L Rev. 529, 536 (2006) (suggesting that an administrative agency such as the federal Food and Drug Administration would want to enhance its power to nationalize control of pharmaceuticals, implying a reduction of state tort interjections into the process, thus introducing doubt about the neutrality of its preemption conclusion).

Removal to federal court is supported in this instance by stare decisis and by the reasons stated in the *Louisiana Opinion* and Part III, *infra.* The national aspects of the Zyprexa litigation are illustrated by the global resolution under federal law of fifty state Medicaid liens. *See In re Zyprexa Prods. Liab. Litig.*, 451 F.Supp.2d 458 (E.D.N.Y.2006). Uniformity in treating claims brought in this MDL matter is desirable. *See In re Zyprexa Prods. Liab. Litig.*, 238 F.R.D. 539, 541–42 (E.D.N.Y. 2006) (suggesting expansion of Class Action Fairness Act to non-class action consolidated individual actions of national scope).

## II. Law

### A. Federal Question Jurisdiction

■ Defendants may remove from state court to federal court "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1441(a). In a recent decision, the Supreme Court affirmed "the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues...." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). Federal question jurisdiction lies over claims that may sound in state law but implicate significant federal issues. *Id.; see also Hopkins v. Walker*, 244 U.S. 486, 490–91, 37 S.Ct. 711, 61 L.Ed. 1270 (1917); *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199, 41 S.Ct. 243, 65 L.Ed. 577 (1921).

*Grable* described the question of whether state law claims involve sufficient federal issues to establish federal question jurisdiction as follows: "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314, 125 S.Ct. 2363; *see generally Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 194–96 (2d Cir.2005) (interpreting and applying *Grable* three-part test).

*Grable* limited language employed in an earlier Supreme Court opinion, *Merrell Dow Pharms. v. Thompson*, which had seemed to suggest that state law claims implicating federal statutes which did not themselves explicitly provide a private right of action could not confer federal question jurisdiction. *See Grable*, 545 U.S. at 316–20, 125 S.Ct. 2363; *Merrell Dow*,

478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). It did not, however, overrule *Merrell Dow's* specific holding that a state cause of action alleging a violation of the Federal Food, Drug, and Cosmetic Act's ("FDCA") labeling provisions did not meet the requirements of federal question jurisdiction. *Id.* at 805–06, 813–17, 106 S.Ct. 3229. Here, Medicaid aspects of the case provide a factor supporting federal jurisdiction in an FDCA-based dispute that was absent in *Merrell Dow.*

### B. Medicaid

The Medicaid program was established in 1965 as Title XIX of the Social Security Act. *See* 42 U.S.C. § 1396 *et seq.* Medicaid is a needs-based entitlement program providing joint federal and state funding of medical care for specified classes of individuals found to be unable to pay their own medical costs. 42 U.S.C. § 1396d. All fifty states voluntarily participate in the Medicaid program.

Between 50 and 83 percent of each state's patient-care-related Medicaid costs are paid for by the federal government— the exact percentage for a particular state (the "federal medical assistance percentage") is calculated pursuant to a formula tied to the state's per capita income. *See* 42 U.S.C. § 1396d(b); 42 C.F.R. § 433.10. During fiscal year 2007, the federal medical assistance percentage for West Virginia is 72.82%, among the highest in the country. Federal Financial Participation in State Assistance Expenditures FY 2007, 70 Fed.Reg. 229 (Nov. 22, 2005).

States must comply with federal requirements for determining eligibility and administering the program. *See* 42 U.S.C. § 1396a. *See also Arkansas Dep't of Health and Human Servs. v. Ahlborn,* 547 U.S. 268, 126 S.Ct. 1752, 1758–59, 164 L.Ed.2d 459 (2006) (describing the structure and administration of the Medicaid program). The federal Secretary of Health and Human Services is charged with administering the Medicaid program. The Secretary exercises that authority through the Centers for Medicare and Medicaid Services. *See Ahlborn,* 126 S.Ct. at 1758; 66 Fed.Reg. 35437.

In order for the cost of a particular drug to be covered by Medicaid, the drug's manufacturer must enter into an agreement with the federal government. *See* 42 U.S.C. § 1396r–8(a). The states may only enter into agreements with drug manufacturers if granted specific permission to do so by the Secretary of Health and Human Services. *Id.* ("the Secretary may authorize a State to enter directly into agreements with a manufacturer"). Except in certain narrowly defined situations, states participating in the Medicaid program must cover drugs that are subject to an agreement between the manufacturer and the federal government. *See id.* at § 1396r–8(d)(4)(B), 1396r–8(d)(4)(C), 1396r–8(d)(2).

### III. Application of Law to Facts

■ In this action, West Virginia claims injuries arising from payments for drugs made as part of its participation in the federal Medicaid program. The parameters and requirements of that participation are governed by federal law. *See* Part II.B, *supra.* The state claims damages resulting from its coverage of the drug Zyprexa. That coverage was mandated by federal law. *See* 42 U.S.C. § 1396r–8(d)(4)(B). Resolution of the question of the state's obligation to reimburse its insureds for Zyprexa, using funds largely provided by the federal government, is essential to the state's theory of damages and presents a substantial and disputed federal issue under *Grable.*

The cases on which plaintiff primarily relies do not significantly undermine this view. *State of West Virginia v. Abbott*

*Laboratories* does not deal with the federal Medicaid statute, but focuses on disputed issues relating to patent law. *See State of West Virginia ex rel Darrell V. McGraw v. Abbott Laboratories,* No. 5:01–0985 (S.D.W.Va. Jan. 11, 2002). The opinion in *Alaska v. Eli Lilly,* involving a Zyprexa suit brought by the Alaska attorney general, does not discuss the federal Medicaid issues presented in sufficient detail for this court to be able to analyze them in conjunction with the present claims of West Virginia. *See Alaska v. Eli Lilly & Company,* No. 06–CV–88, 2006 WL 2168831 (D.Alaska July 28, 2006).

The determination that West Virginia's suit presents a substantial and disputed federal question does not end the jurisdictional inquiry: "the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts...." *Grable,* 545 U.S. at 313–14, 125 S.Ct. 2363.

The exercise of federal jurisdiction over the West Virginia Attorney General's action implicating the federal Medicaid laws will not attract "a horde of original filings and removal cases raising other state claims with embedded federal issues." *Id.* at 318, 125 S.Ct. 2363. Unlike the situation addressed by the *Merrell Dow* court, where finding federal jurisdiction over a state cause of action that implicated a federal standard might have led to a significant rise in the caseload of the federal courts, this case does not pose such a threat. *See Grable,* 545 U.S. at 318, 125 S.Ct. 2363. ("For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could another federal standard without a federal cause of action. And that would have meant a tremendous number of cases."). At issue here is not simply a federal standard, but also the added factor of an intricate federal regulatory scheme including detailed federal funding provisions, requiring some degree of national uniformity in interpretation.

This matter is distinguishable from the question, over which there is a circuit split, of whether disputes about the precise definition of "average wholesale price," as the term is used in the federal Medicare statutes, is sufficient to confer federal question jurisdiction. *Compare Hawaii v. Abbott Laboratories, Inc.,* 469 F.Supp.2d 842, 856 (D.Hawai'i 2006) (finding the meaning of "average wholesale price" did not pose a substantial disputed issue sufficient to confer federal jurisdiction) *with In re Pharm. Indus. Average Wholesale Price Litig.,* 457 F.Supp.2d 77, 80 (D.Mass.2006) (finding meaning of "average wholesale price" raised a substantial federal issue sufficient to confer federal question jurisdiction). The federal questions presented by West Virginia's suit extend beyond the definition of a single federal statutory term to encompass a broad range of federal regulatory and funding provisions. *See Hawaii,* at 856 ("Just like the claims in *Merrell Dow,* [claims seeking to recover Medicare copayments] are state law tort claims that rest in part on a federal standard")

## IV. Conclusion

The motion to remand is denied. West Virginia's suit poses substantial and disputed federal issues sufficient to confer federal question jurisdiction.

SO ORDERED.